IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BLAKE ALLEN,

    Plaintiff,

v.

RODNEY BAMFORD,

    Defendant.

Case No. 6:16-cv-00996-MC

OPINION & ORDER

_____

MCSHANE, Judge:

    Plaintiff Blake Allen filed this action on 6/2/2016 against Keizer police officer Rodney Bamford. In his Complaint, Mr. Allen alleges that Officer Bamford violated Allen's 4th Amendment rights by arresting him without probable cause for the crime of Interfering with a Police Officer (ORS 162.247(1)) during a domestic violence investigation at Allen's home on 9/19/2015. (ECF No. 1).

1 – ORDER

Allen filed a Motion for Partial Summary Judgment (ECF No. 32) on 3/27/2017. Bamford filed a Motion for Summary Judgment (ECF No. 39) on 3/31/2017. Oral arguments were heard in court on 4/14/2017 (ECF No. 65), and these matters are now before this Court.

Because Officer Bamford had probable cause to arrest Mr. Allen and is entitled to qualified immunity, Defendant's Motion for Summary Judgment (ECF No. 39) is **GRANTED** and this matter is **DISMISSED** with prejudice, pursuant to Fed. R. Civ. P. 56. Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is DENIED as moot.

## BACKGROUND

On 9/15/2015, Mr. Allen and his girlfriend Kristin May attended Oktoberfest in Mt. Angel, Oregon. They returned to their home located on Winter Leaf Court North in Keizer, Oregon at approximately 11pm. (ECF No. 42-1 at p.3). Allen and May had consumed alcohol at Oktoberfest[1] and they were arguing upon their return home. (*Id* at pp.4-5). At approximately 11:20pm, a neighbor called 911 to report a potential domestic violence situation. The neighbor reported that she heard a man yelling and screaming profanities and twice heard a woman crying and saying, "Ouch, ouch" and "Get away from me" (ECF No. 40 at pp.1-2; 41 at pp.1-2; 42-2 at p.3; and 55-2 at p.2).

In response to the 911 call, Keizer Police dispatched Officer Bamford, Officer Perez, and Officer Harrison to the area. (ECF No. 42-2 at p.4). When the officers were standing in the front yard of the neighbor's house, they could hear a woman (later identified as Ms. May) crying from somewhere inside Allen's house. (ECF No. 41 at p.2; 42-2 at p.7; 42-1 at p.5). Officers Bamford and Perez walked to the front door of Allen's house and knocked on the front door

---

[1] Whether or not Allen or May were intoxicated during the incident is disputed, but has no bearing on the decision in this case.

2 – ORDER

while Officer Harrison stayed behind. (ECF No. 42-2 at p.8). Mr. Allen answered the door, stepped out of the house, and closed the door behind him. (ECF No. 42-1 at p.6; 42-2 at p.12; and 41 at p.2). Bamford and Perez explained to Allen that they were responding to a possible domestic disturbance and asked him what had happened. (*Id*). Mr. Allen admitted that he and Ms. May had been in an argument, but that it was just verbal. (ECF No. 42-1 at p.8; 42-2 at p. 12; and 41 at p.2).

The officers then asked Mr. Allen if they could either step inside to speak with Ms. May or if he could ask her to come outside so they could talk to her and verify that the dispute had not been physical (ECF No. 42-2 at pp. 13-15, 21, 27; 42-1 at p.9; and 41 at pp.2-3). Mr. Allen was warned that if he did not comply and tried to prevent the officers from contacting Ms. May, he could be arrested for interfering. (*Id* and ECF No. 40 at p.3). During his deposition, Mr. Allen recalled that the officers made these requests and explained his options "more than once… maybe about three times." (ECF No. 42-1 at p.10). Mr. Allen refused both options, telling the officers that they "needed a warrant" and that he did "not have to help them." (ECF No. 42-2 at p.13; 41 at pp.2-3; and 42-1 at p.9).

Mr. Allen then took a step backwards towards the closed door, blocking the officers' access to it, at which point Officer Bamford told Allen he was under arrest for the crime of Interfering. Officer Bamford placed Allen in handcuffs. (ECF No. 40 at p. 4; 41 at p.3; 42-2 at pp.15-16, 23-24). After being arrested, Mr. Allen was transported to Marion County Jail. (ECF No. 1 at p.2; 32 at p.6). On 9/25/2015, the Marion County District Attorney filed an Information charging Allen with Interfering (the same crime he was arrested for), but the charge was never prosecuted. (ECF No. 55-1).

3 – ORDER

# **STANDARD OF REVIEW**

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994)). On a motion for summary judgment, "the moving party bears the initial burden to show the absence of a material and triable issue of fact; the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).

"Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Devenpeck v. Afford*, 543 U.S. 146, 152 (2004); *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990); *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012). The determination of probable cause requires only a "fair probability" or a "substantial chance" of criminal activity, not an actual showing that such activity occurred. *US v. Brooks*, 367 F.3d 1128, 1134 (9th Cir. 2004). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Devenpeck v. Afford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). If an officer has probable cause to believe that an

individual has committed even a very minor criminal offense in his presence, he may arrest the individual without violating the Fourth Amendment. *Atwater v. City of Logo Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001).

ORS 162.247(1) provides that:

"A person commits the crime of interfering with a peace officer…if the person, knowing that another person is a peace officer…:
(a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer… from performing the lawful duties of the officer with regards to another person; *or*
(b) Refuses to obey a lawful order by the peace officer…" (ORS 162.247(1)).

A refusal to obey officer's lawful order requires the defendant to *consciously intend* to disobey the officer's lawful order, not merely fail to disobey the order. *State v. Enyeart*, 266 Or App 763, 340 P3d 57 (2014). A person arrested under ORS 162.247(1) does not need to have a culpable mental state with respect to lawfulness of police order. *State v. Ruggles*, 238 Or App 86, 242 P3d 643 (2010) (Supreme Court review denied). Unlawful police conduct in initiating an encounter does not prevent an order issued during the encounter from being a lawful order. *State v. Neill*, 216 Or App 499, 173 P3d 1262 (2007) (Supreme Court review denied).

## DISCUSSION

Officer Bamford is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 because he had probable cause to arrest Mr. Allen on 9/15/2015 for violating of ORS 162.247(1) (interfering with a peace officer). Bamford is also entitled to Qualified Immunity.

<u>Probable Cause to Arrest for Interfering:</u>

Police officers have a duty to conduct an investigation into the basis of a witness report, including 911 calls reporting potential domestic violence situations. *Peng v. Mei Chin Penghu*,

5 – ORDER

335 F.3d 970, 977 (9th Cir. 2003); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991); *Box v. Miovas*, No. 12-cv-04347-VC (PR), 2015 WL 1927317, at 9 (D. Or. April 28, 2015). This was precisely what Officer Bamford was doing on 9/15/2016. In order to complete that investigation, it was necessary for him to speak with the potential victim. He was not obligated to simply take Mr. Allen at his word that Ms. May was fine, and it would have been remarkable incompetence under the circumstances if he had done so. *See Watson v. City of Vancouver*, No. C13-5936-RBL, 2015 WL 1137530, *6 (W.D. Wash. March 12, 2015) (wherein the court found the plaintiff's claim that the officers were required to leave after the plaintiff told them the alleged victim was not physically injured, was "simply wrong").

While it is true that a citizen's *speech alone* does not constitute acting in manner that prevents or attempts to prevent a peace officer from performing their duty (*see State v. Lam*, 176 Or App 149, 29 P3d 1206 (2001)), as discussed during oral arguments (ECF No. 65), it was Mr. Allen's act of **stepping backwards and physically blocking the officers' access to his front door** that gave Officer Bamford probable cause to arrest him for Interfering with a Peace Officer under ORS 162.247(1). Simply put, the court finds that because Mr. Allen interfered with the officers' ability to investigate the domestic violence call and ensure Ms. May's safety, there was probable cause to arrest plaintiff for interfering with a police officer.

Further, the 9th Circuit has determined that a District Attorney's independent decision to charge someone with the same crime they were arrested for creates a *presumption* that there was probable cause to arrest. *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008). It is the *plaintiff* who bears the burden of producing evidence to rebut the presumption and they must present more than "conclusory allegations." *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994); *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007). It can be rebutted "by

6 – ORDER

showing, for example, that the prosecutor was pressured or caused by the investigating officers to act contrary to his independent judgment or that the investigating officers presented the prosecution with information known by them to be false." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007). Or in instances where the prosecutor relied on police reports and the reports themselves omitted important information or contained conflicting accounts, the jury could determine that the officers "procured the filing of the criminal complaint by making misrepresentations or material omissions to the prosecuting attorney." *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988); see also *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991); *Smiddy v. Varney (Smiddy I)*, 655 F.2d 261, 267 (9th Cir. 1981); and *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991).

Here, the Marion County District Attorney independently chose to charge Allen with Interfering with a Peace Officer under ORS 162.247(1), the same crime he was arrested for. (ECF 55-1). The fact that they did not successfully prosecute him for this crime is immaterial to this discussion. What's important is that there has been no showing by the plaintiff that the defendant (or anyone else) compromised or influenced the independent prosecutorial judgment of the DA, therefore the presumption of probable cause based on the DA's initial choice to charge Allen remains unrebutted.

Qualified Immunity:

Officer Bamford is also entitled to qualified immunity. As stated on the record during oral arguments (ECF No. 65), even if it could be argued that Bamford did *not* have probable cause, he would nonetheless be entitled to qualified immunity because it was certainly not

7 – ORDER

"clearly established" and "beyond debate" that Bamford's conduct would have violated the constitution.

"Qualified immunity shields a government official from money damages unless (1) the official violated a statutory or constitutional right, *and* (2) that right was *clearly established* at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)); *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985); *Blankenhorn v. City of Orange*, 485 F.3d 463,482(9th Cir. 2007), and *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir.2004). An officer's "conduct violates clearly established law when . . . *every reasonable official* would have understood that what he is doing violates a right." *Id.* at 741. "Existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* at 731.

In *Wilkins v. City of Oakland*, the 9th Circuit noted that, "even if the officer's actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity." *Wilkins v. City of Oakland*, 350 F.3d 955 (9th Cir. 2003). The court further noted that, "qualified immunity thus provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)).

Here, it is clear that Officers Bamford and Perez do not fall in the "plainly incompetent" category as described by the US Supreme Court in *Malley*. Their actions during their interaction with Mr. Allen were objectively reasonable based on the totality of the circumstances. Prior to arriving at the scene, a non-anonymous caller had described to 911 what purported to sound like a domestic disturbance coming from the Allen home. This report was supported by the officer's

8 – ORDER

observations when they arrived. They heard a woman crying in the Allen home and Mr. Allen would not give them access to what they reasonably might suspect was a victim of domestic violence.

Qualified immunity contemplates that officers are required, in these dynamic and difficult situations, to make discretionary decisions and to make them quickly. Their decisions do not need to be the best decision or even a fair one. There may even have been other options, when reviewed in the calmness of hindsight, that could have worked better under the circumstances. Short of violating a clearly established right, however, the notion of qualified immunity shields officers from liability when their decisions are not perfect. Here, I believe that the officer's had probable cause at the time to arrest Mr. Allen. If I am wrong, they certainly are protected from liability for reaching the same conclusion as they contemplated how to ascertain the safety of Ms. May from Mr. Allen's porch.

## **CONCLUSION**

For these reasons and those read into the record during oral arguments on 4/14/2017, Defendant's Motion for Summary Judgment (ECF No. 39) is **GRANTED** and this matter is **DISMISSED** with prejudice, pursuant to Fed. R. Civ. P. 56. Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is DENIED as moot.

IT IS SO ORDERED.

DATED this 25th day of May, 2017.

_____
Michael J. McShane
United States District Judge

9 – ORDER